**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| WESLEY ULMER,<br><br>    Plaintiff,<br><br>    v.<br><br>THE HOME DEPOT, INC.,<br><br>    Defendant. | Civil Action No. 1:06-CV-00459-JJF |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM

David H. Williams (#616)
dwilliams@morrisjames.com
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900

Grace E. Speights (*pro hac vice* motion pending)
gspeights@morganlewis.com
Richard W. Black (*pro hac vice* motion pending)
rblack@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

Dated August 18, 2006      Attorneys for Defendant Home Depot U.S.A, Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| WESLEY ULMER, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE HOME DEPOT, INC., )<br><br>Defendant. ) | Civil Action No. 1:06-CV-00459-JJF |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

## I.    INTRODUCTION

Defendant Home Depot, U.S.A., Inc. ("Defendant" or "Home Depot"), incorrectly

identified as "The Home Depot, Inc." in Plaintiff Wesley Ulmer's ("Plaintiff's")

Complaint, hereby submits this Memorandum of Law in support of its Motion to Dismiss

Plaintiff's Complaint For Failure to State A Claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  In this action, Plaintiff, a former Home Depot

employee, alleges that Home Depot breached the implied covenant of good faith and fair

dealing when it terminated him in December 2005.  Plaintiff's Complaint also seeks the

imposition of punitive damages as a result of Home Depot's alleged breach.

As set forth more fully below, Plaintiff's Complaint is legally deficient for several

reasons.  First, as an at-will employee under Delaware law, Plaintiff may challenge his

termination based on an alleged breach of the implied covenant of good faith and fair

dealing in four narrow circumstances.  Plaintiff's Complaint does not state a claim under

any of these four exceptions, however, because Plaintiff has not, as required under

Delaware law, alleged that Home Depot engaged in any fraud, deceit, or misrepresentation in terminating his employment. Second, even if Plaintiff were to characterize his claim as falling under the fourth claim within the implied covenant exception – employer falsification or manipulation of employment records to create fictitious grounds for termination – his Complaint fails to state such a claim because no facts suggesting the falsification or manipulation of Plaintiff's employment records have been alleged. Third, Plaintiff's cause of action seeking the imposition of punitive damages for Home Depot's alleged breach of the covenant of good faith and fair dealing fails as a matter of law because, under established Delaware law, punitive damages are not available in connection with such a claim. Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety and with prejudice.

## II.     RELEVANT FACTS ALLEGED IN PLAINTIFF'S COMPLAINT

Plaintiff began his employment with Home Depot on May 2, 2004. (Complaint ¶ 3, attached hereto as Exhibit A). On December 16, 2005, a third-party vendor alleged that Mr. Ulmer used "sexually abusive" and "inflammatory language" in the men's restroom. (Id., ¶ 5). Shortly thereafter, Home Depot investigated the vendor's allegations. (Id., ¶6). As part of the investigation, Plaintiff was questioned about the alleged incident by several Home Depot managers, including Assistant Manager Vincent Slanga, Assistant Store Manager Terence Monaghan, and Loss Prevention Manager Dan Alfaro. (Id., ¶¶ 8-9). Plaintiff at first denied speaking to anyone in the restroom. (Id., ¶ 11). Later, upon being questioned and informed of the vendor's allegations, Plaintiff admitted to engaging in the alleged actions, and subsequently prepared and signed a

written confession at the request of the three Home Depot managers. (*Id.*, ¶¶ 14-16).

Following Plaintiff's admission, he was terminated. (*Id.*, ¶ 17).

## III.   ARGUMENT

### A.   Rule 12(b)(6) Motion to Dismiss Standard

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This Court must accept

Plaintiff's well-pled factual allegations as true for purposes of the motion, but it need not

accept as true legal conclusions or immaterial factual inferences. *See Morse v. Lower*

*Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (holding that while a court must

accept all allegations in a complaint and reasonable inferences that can be drawn

therefrom, a "court need not credit a complaint's 'bald assertions' or 'legal conclusions'

when deciding a motion to dismiss"). The purpose of Rule 12(b)(6) is to "streamline

litigation by dispensing with needless discovery and fact finding." *Neitzke v. Williams*,

490 U.S. 319, 326-27 (1989). Accordingly, if it appears from the face of the pleading

that Plaintiff can prove no set of facts that would entitle him to relief, Plaintiff's claims

should be dismissed. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### B.   Plaintiff's Claim For Breach of The Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed Because His Complaint Fails To State A Claim Upon Which Relief Can Be Granted.

Under Delaware law, an employer has wide latitude in deciding how it conducts

its business. *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992). Indeed,

there is a heavy presumption that employment, unless otherwise expressly stated, is at-

will in nature with an indefinite duration. *Id.* at 102. Under the at-will employment

doctrine, an employer may terminate an employee for any reason, with or without cause

and at any time. *Id.* at 103. Delaware law does, however, recognize a limited implied

covenant of good faith and fair dealing as an exception to the employment-at-will doctrine. *Id.* at 101; *see also Lord v. Souder*, 749 A.2d 393, 400 (Del. 2000).

In *E.I. Dupont de Nemours v. Pressman*, 679 A.2d 436, 442-444 (Del. 1996), the Supreme Court of Delaware identified four actionable claims under the limited implied covenant of good faith and faith dealing exception. These four claims arise where: (1) the termination violated public policy; (2) the employer misrepresented an important fact and the employee relied thereupon either to accept a new position or remain in a present one; (3) the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; or (4) the employer falsified or manipulated employment records to create fictitious grounds for termination. *Id.* at 442-444; *Lord*, 749 A.2d at 401. It is well-established that any claim under the implied covenant of good faith and fair dealing exception requires that an employer's conduct amount to fraud, deceit or misrepresentation. *Reed v. Agilent Technologies, Inc.*, 174 F.Supp.2d 176, 191 (D. Del. 2001).

### 1. Plaintiff's Complaint Does Not Allege That Home Depot's Acts Constituted Fraud, Deceit, or Misrepresentation.

In order to limit the intrusion into the at-will employment doctrine, courts have held that to establish a breach of the implied covenant of good faith and fair dealing, the conduct of the employer must constitute "an aspect of fraud, deceit, or misrepresentation." *Merrill*, 606 A.2d at 99; *see also Reed*, 174 F.Supp.2d at 191. Here, Plaintiff has not alleged that Home Depot or its managers engaged in any conduct rising to the level of fraud, deceit, or misrepresentation. At most, Plaintiff's Complaint alleges that, when Plaintiff was confronted with the third-party vendor's allegations that he used

"sexually abusive" and "inflammatory" language in the men's restroom, Plaintiff initially denied the allegations, but later admitted to engaging in the alleged misconduct.

Indeed, there is no allegation that the three managers who interviewed Plaintiff misrepresented the nature of the vendor's allegations, deceived Plaintiff about those allegations, or invented the allegations out of whole cloth. Rather, Plaintiff's Complaint states that the managers "suppl[ied] [Plaintiff] all of the details of what is alleged to have happened in the bathroom, and told him to admit that he did it." (Complaint, ¶ 12). Though Plaintiff's Complaint alleges that the three Home Depot managers "repeatedly told Plaintiff to confess so that they could return to work," there is no allegation that Plaintiff was somehow deceived or fraudulently induced into admitting to his actions. (*Id.*, ¶ 13). Plaintiff's Complaint instead indicates that Plaintiff himself "reacted to the stress of the situation" and admitted to the vendor's allegations. (*Id.*, ¶ 14). Moreover, there is no allegation that anyone other than Plaintiff authored his written confession. Rather, it is merely alleged that, once Plaintiff admitted to the alleged misconduct, the three Home Depot managers requested that Plaintiff write a complete confession. (*Id.*, ¶¶ 14-16).

To be sure, Plaintiff's Complaint makes clear that he disagreed with the way Home Depot carried out its investigation into the incident and that he disliked the managers' conduct when he was confronted. However, an employee's disagreement with an employer's decision or disgruntlement with an employer's procedures are not sufficient to establish fraud, deceit, or misrepresentation. *See Bailey v. City of Wilmington*, 766 A.2d 477, 480 (Del. 2001) (affirming judgment for employer because a plaintiff's allegation that the procedures followed by the employer were improper was

insufficient to supply the "fraud, deceit or misrepresentation" required to show a breach

of the implied covenant of good faith and fair dealing). Because Plaintiff's Complaint

does not allege fraud, deceit or misrepresentation sufficient to state a claim for the breach

of the implied covenant of good faith and fair dealing, Plaintiff's Complaint should be

dismissed.

> **2.    Home Depot Did Not Manipulate or Falsify Employment Records To Create Fictitious Grounds For Plaintiff's Termination.**

As discussed above, the only four claims available under the implied covenant of

good faith and fair dealing exception to the employment-at-will doctrine exist where: (1)

the termination violated public policy; (2) the employer misrepresented an important fact

and the employee relied thereupon either to accept a new position or remain in a present

one; (3) the employer used its superior bargaining power to deprive an employee of

clearly identifiable compensation related to the employee's past service; or (4) the

employer falsified or manipulated employment records to create fictitious grounds for

termination. *Pressman*, 679 A.2d at 442-444; *Lord*, 749 A.2d at 401. Plaintiff has not

specified which, if any, of the four claims he seeks to proceed under here. It is clear,

however, that the first three "claims" do not apply because Plaintiff has not alleged that:

(1) his termination violated public policy, (2) he relied upon any facts represented to him

by Home Depot to "accept a new position or remain in a present one," or (3) Home Depot

used "superior bargaining power" to deprive him of compensation. Plaintiff similarly has

not alleged that Home Depot "falsified or manipulated employment records to create

fictitious grounds for termination." However, even assuming *aguendo* that, given the

clear inapplicability of the other three claims, Plaintiff does seek to proceed under such a

claim, dismissal is still appropriate.

To support the fourth *Pressman* "claim," a plaintiff must prove both falsification of his employment records and termination of his employment. *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 831 (Del. 2005). Here, it is undisputed that Plaintiff was terminated. However, Plaintiff has not alleged that Home Depot falsified or manipulated Plaintiff's employment records at all, let alone to create a fictitious ground for his termination. Delaware courts addressing such claims have required that an employer actually manipulate or falsify records. *See Pressman*, 679 A.3d at 438-39 (claim stated where employee's supervisor placed an anonymous negative evaluation in the employee's personnel file which misrepresented the employee's responsibilities and understated his accomplishments); *see also Geddis v. Univ. of Delaware*, 40 Fed. Appx. 650, 654 (3d Cir. 2002) (unpublished) (no claim stated under *Pressman* where the employee did not allege that his supervisor intentionally created fictitious negative information about him in order to get him fired) (attached hereto as Exhibit B); *Brodsky v. Hercules, Inc.*, 966 F.Supp. 1337, 1352 (D. Del. 1997) ("*Pressman* can be fairly read to hold the covenant has been breached when an agent of the employer fabricates a record in order to establish a fictitious basis for an employee's termination.").

Here, there is no allegation that Home Depot fabricated or manipulated any of Plaintiff's records in an effort to create fictitious grounds for his termination. To the contrary, the allegations in Plaintiff's own Complaint indicate that Home Depot investigated a complaint made by a *third-party* vendor, confronted the Plaintiff about the vendor's allegations, and subsequently terminated the Plaintiff after he admitted to the vendor's allegations. Even assuming, for the sake of argument, that the vendor's allegations about Plaintiff's conduct in the bathroom were fictitious, they were not

fabricated by Home Depot. Moreover, Plaintiff admitted to the conduct alleged. Under

such circumstances, Plaintiff has failed to state a claim upon which relief can be granted.

*See Reed v. Agilent Technologies, Inc.*, 174 F.Supp.2d 176, 191-192 (D. Del. 2001)

(granting summary judgment for employer where plaintiff failed to establish that the

employer had manufactured false evidence against him and where plaintiff admitted to

the alleged misconduct).

Finally, even if Plaintiff's Complaint is read to allege that Home Depot's *stated*

reason for his termination was false (or not the real reason), Plaintiff's Complaint still

does not state a claim for the breach of the implied covenant of good faith and fair

dealing. This Court has observed that "Nothing in *Pressman* suggests an employer who

gives an employee a false reason for termination is subject to liability under the implied

covenant of good faith and fair dealing. *Pressman* only held culpable the *manufacture* of

grounds for dismissal, not the *statement* of a false reason for dismissal." *Williams v.*

*Caruso*, 966 F.Supp. 287, 291 (D. Del. 1997) (emphasis in original). *See also EEOC v.*

*Avecia*, 151 Fed. Appx. 162, 165-166 (3d Cir. 2005) (unpublished) ("If the employer did

not actually falsify or manipulate employment records, then it does not matter if the

employer gave a false rational for the termination") (attached hereto as Exhibit C).

Because Plaintiff's Complaint, on its face, fails to state a claim upon which relief

can be granted based on the limited implied covenant of good faith and fair dealing

exception to the employment-at-will doctrine, the Complaint should be dismissed in its

entirety with prejudice.

**C.    Plaintiff's Claim for Punitive Damages Should Be Dismissed Because Such Damages Are Not Available In Connection With Plaintiff's Breach Claim.**

"Count II" of Plaintiff's Complaint simply seeks "punitive damages" in connection with Plaintiff's termination. Plaintiff's sole claim related to his termination is his allegation that Home Depot breached the implied covenant of good faith and fair dealing when it terminated him. Punitive damages, however, are not available to Plaintiff in connection with that claim as a matter of law. In *Pressman*, the Supreme Court of Delaware held that punitive damages are not available for any breach of an employment "contract" and rejected the plaintiff's request for punitive damages in connection with an alleged breach of the implied covenant of good faith and fair dealing in the employment-at-will context. *See Pressman*, 679 A.2d at 448; *see also Fox v. Rodel, Inc.*, No. C.A. 98-531, 1999 WL 803885 (D. Del. Sept. 13, 1999). Thus, Home Depot respectfully requests that Count II of Plaintiff's Complaint be dismissed with prejudice.[1]

---

[1] Count II of Plaintiff's Complaint should also be dismissed because it appears to assert his request for punitive damages as a stand-alone cause of action. Plaintiff's Complaint includes a prayer for relief that seeks punitive damages and the inclusion of a request for punitive damages as its own cause of action , without more, is improper.

IV.   **CONCLUSION**

For the reasons set forth above, the Court should grant Home Depot's Motion and

enter an Order, in the form attached, dismissing the complaint with prejudice.

Respectfully submitted,

David H. Williams (#616)
dwilliams@morrisjames.com
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900

Grace E. Speights (*pro hac vice* motion pending)
gspeights@morganlewis.com
Richard W. Black (*pro hac vice* motion pending)
rblack@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

Dated August 18, 2006      Attorneys for Defendant Home Depot U.S.A, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| WESLEY ULMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-459 |
| | ) | |
| THE HOME DEPOT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF ELECTRONIC SERVICE**

I, David H. Williams, hereby certify that on August 18, 2006, I electronically filed

the attached **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM** with the Clerk of

Court using CM/ECF which will send notification of such filing(s) to the following:

> R. Stokes Nolte, Esquire
> 1010 N. Bancroft Parkway
> Suite 21
> Wilmington, DE  19805

_David H. Williams_

David H. Williams (#616)
dwilliams@morrisjames.com
MORRIS, JAMES, HITCHENS & WILLIAMS, LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900

Grace E. Speights
gspeights@morganlewis.com
Richard W. Black
rblack@morganlewis.com
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5158

Dated:  August 18, 2006          Attorneys for Defendant Home Depot U.S.A, Inc.

EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

**RECEIVED**

2006 JUN 23 P 5: 48

DELAWARE JUDICIARY

|  |  |  |
|---|---|---|
| WESLEY ULMER | ) | |
| | ) | C.A. No. |
| Plaintiff, | ) | ARBITRATION    O6C-O6-238 PLA |
| v. | ) | TRIAL BY JURY OF 12 DEMANDED |
| | ) | |
| THE HOME DEPOT, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1.    Plaintiff, Wesley Ulmer, (Mr. Ulmer) is a 20 year-old adult individual residing within the State of Pennsylvania at 5010 Concord Road, Aston, PA 19014.

2.    Defendant, Home Depot USA, is a foreign corporation that conducts business in Delaware with a retail facility located at 601 Naamans Road Claymont, DE 19703.

3.    Plaintiff began working for Defendant on May 2, 2004.

4.    Plaintiff suffers from panic attacks and has a diagnosed panic disorder in June, 2005. At all times relevant to this complaint, Defendant was aware of the Plaintiff's diagnoses.

5.    On December 16, 2005, a vendor of Defendant alleged that someone in the restroom used sexually abusive and using inflammatory language in the men's room.

6.    Home Depot began investigating the alleged incident on December 20, 2005.

7.    The only restrooms available at Home Depot are open to the public, so both employees and customers use the same facilities.

8.    On December 23, 2005, Plaintiff was called into the Assistant Manager, Vincent Slanga's, office.

9.    There he was confronted by Vincent Slanga, Terence Monaghan (Assistant Store Manager)

1

and Dan Alfaro (Loss Prevention Manager), regarding an incident that allegedly took place in the restroom on December 16, 2005.

10.    The Defendant's employees called Plaintiff into Mr. Slanga's office and falsely accused him of using sexually abusive and inflammatory language in the men's room. .

11.    Plaintiff denied speaking to anyone in the restroom.

12.    The Defendant's Managers advised Plaintiff what occurred, supplying all of the details of what is alleged to have happened in the bathroom, and told him to admit that he did it.

13.    The three managers repeatedly told Plaintiff to confess so that they all could return to work. One or more of the Managers suggested to Plaintiff that maybe Plaintiff was talking on his cell phone and the vendor simply overheard the conversation.

14.    Plaintiff reacted to the stress of the situation and "confessed" to talking on his cell phone. The managers then sent Plaintiff to Dan Alfaro's office to write the "confession." They locked Plaintiff in the office.

15.    When Plaintiff had written his "confession" the managers read it and informed Plaintiff that it is "not enough" and informed him that they wanted him to "admit everything" and then everyone could go back to work.

16.    Plaintiff then added more written information to the "confession."

17.    Once he had finished the "confession" he was returned to the Manager's office where he was informed that he has been terminated.

18.    Plaintiff did not use sexually abusive and inflammatory language in the men's room.

19.    As a result of the above-referenced incident, Plaintiff, Mr. Ulmer, has suffered emotional

2

injuries. He now has to see his doctor for treatment of his panic disorder every month, whereas before this incident he was only seeing him once every 3 to 4 months.

20.    As a further result of the above-referenced incident, Mr Ulmer suffered pain and suffering and may continue to experience the same for an indefinite time in the future.

## COUNT I- BREACH OF CONTRACT
## Breach of Duty of Good Faith and Fair Dealing

21.    Paragraphs 1-20 of Plaintiffs' Complaint are incorporated herein by reference as though set forth at length.

22.    The contract of employment between Mr. Ulmer and Home Depot was subject to a duty of good faith and fair dealing by both parties thereto.

23.    By their actions and conduct as set forth herein, the defendants breached the duty of good faith and fair dealing arising and accompanying Mr. Ulmer's contract of employment with Home Depot.

24.    As a direct and proximate result of the conduct of the defendants as outlined above, Mr. Ulmer was damaged as set forth herein.

WHEREFORE, Plaintiff, Mr. Ulmer, requests that this Court enter judgment in his favor and against Defendant, Home Depot, in the amount of his compensatory damages, punitive damages, litigation costs, attorney's fees and pre-judgment interest.

## COUNT II- PUNITIVE DAMAGES
## Intentional, Malicious and Wanton Behavior of Defendants

25.    Paragraphs 1-24 of Plaintiffs' Complaint are incorporated herein by reference as though set forth at length.

3

26.    Defendants acted intentionally, maliciously and wantonly when they locked Mr. Ulmer in an office to write a "confession"

27.    Defendants acted intentionally, maliciously and wantonly when they terminated Mr. Ulmer from his position.

28.    As a direct and proximate result of the conduct of the defendant as outlined above, Mr. Ulmer was damaged as set forth herein.

WHEREFORE, Plaintiff, Mr. Ulmer, requests that this Court enter judgment in his favor and against Defendants, the New Castle County Council, in the amount of his compensatory damages, punitive damages, litigation costs, attorney's fees and pre-judgment interest.


R. Stokes Nolte
DE Bar ID No 2301
1010 N. Bancroft Parkway
Suite 21
Wilmington, DE 19805
(302) 777-1700
Date:                                        Attorney for Plaintiff

4

# EXHIBIT B

Westlaw.

40 Fed.Appx. 650                                                                 Page 1
40 Fed.Appx. 650, 2002 WL 1587656 (C.A.3 (Del.))
**(Cite as: 40 Fed.Appx. 650)**

**H**
Briefs and Other Related Documents

This case was not selected for publication in the Federal ReporterNOT PRECEDENTIALThis case was not selected for publication in the Federal Reporter.NOT PRECEDENTIAL   Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP I 5.3.)
United States Court of Appeals,Third Circuit.
Alexander GEDDIS, Jr., Appellant,
v.
UNIVERSITY OF DELAWARE, a corporation of the State of Delaware.
No. 01-2298.

Submitted Feb. 4, 2002.
Decided March 8, 2002.

Former employee of state university brought action against former employer, alleging that he was discharged from his job because of his race and gender, in violation of Title VII, and implied covenant of good faith and fair dealing under Delaware law. The United States District Court for the District of Delaware, 2001 WL 536408,Roderick R. McKelvie, J., granted summary judgment in favor of employer. Former employee appealed. The Court of Appeals, Sloviter, Circuit Judge, held that: (1) employee failed to show that employer's articulated reason for his discharge was pretextual, and that he was actually fired due to employer's discriminatory animus, precluding Title VII action, and (2) failure of employee's supervisor to adequately investigate allegations against employee did not constitute breach of the covenant of good faith and fair dealing.

Affirmed.

West Headnotes

**[1] Civil Rights 78 ⟊1179**

78 Civil Rights
　78II Employment Practices
　　78k1164 Sex Discrimination in General
　　　78k1179 k. Discrimination Against Men; Reverse Discrimination. Most Cited Cases
　　　(Formerly 78k165)

**Civil Rights 78 ⟊1234**

78 Civil Rights
　78II Employment Practices
　　78k1232 Reverse Discrimination
　　　78k1234 k. Race, Color, Ethnicity, or National Origin. Most Cited Cases
　　　(Formerly 78k153)
Former state university employee, a white male, failed to show that employer's articulated reason for his discharge, that employee lacked the credibility and ability to perform management duties required of his position, was pretextual, and that he was actually fired due to employer's discriminatory animus, precluding employee's Title VII race and gender discrimination action against employer; although employee was replaced by an African-American female, there was no evidence that he was fired either because of his race or gender. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Labor and Employment 231H ⟊843**

231H Labor and Employment
　231HVIII Adverse Employment Action
　　231HVIII(A) In General
　　　231Hk841 Good Faith and Fair Dealing; Bad Faith
　　　231Hk843 k. Discharge or Layoff. Most Cited Cases
　　　(Formerly 255k30(1.15)       Master and Servant)
Alleged failure of employee's supervisor to adequately investigate co-worker's allegations against him before discharging employee did not rise to the level of falsification or manipulation required to constitute a breach of the covenant of good faith and fair dealing, under Delaware law; although such alleged conduct constituted reckless disregard for the truth, and even if it violated employer's policy of investigating serious allegations about its employees, the tort of breach of the covenant of good faith and fair dealing did not extend to such conduct.

**\*650** On Appeal from the United States District Court for the District of Delaware. (D.C. No. 99-cv-00304).     District Judge:     Hon. Roderick R. McKelvie.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

40 Fed.Appx. 650
40 Fed.Appx. 650, 2002 WL 1587656 (C.A.3 (Del.))
(Cite as: 40 Fed.Appx. 650)

Page 2

Before SLOVITER, AMBRO, Circuit Judges, and POLLAK, District Judge. FN*

> FN* Hon. Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

*651 OPINION OF THE COURT

SLOVITER, Circuit Judge.

**1 Alexander Geddis, Jr., a white male, filed this suit claiming that his former employer, the University of Delaware, violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (2001), by firing him from his job because of his race and gender, and violated the implied covenant of good faith and fair dealing that exists under Delaware law by misrepresenting his employment record. The District Court granted summary judgment for the University and Geddis appealed.

I.

BACKGROUND

Geddis was hired in 1988 by the University of Delaware as its Director of Support Services. On May 14, 1996, after various complaints about aspects of Geddis' behavior had been made to University officials, he was advised he would be terminated effective May 31, 1996. In accordance with the University's grievance procedures, Geddis pursued and exhausted all of his remedies within the University, losing at every step of the process.

Prior to Geddis' termination, Charlene Benson, an African-American woman who was then an executive assistant to the Executive Vice-President of the University, was asked by Barbara Kreppel, Geddis' immediate supervisor, to monitor Geddis' conduct and performance. Thereafter, Benson was told to familiarize herself with the departments under Geddis' supervision to learn the skills necessary to direct Support Services. After Geddis was terminated, the University appointed Benson to Geddis' former position on an interim basis. Approximately five months later, she was permanently appointed Director of Support Services without an official executive search for other candidates. There is a dispute between the parties whether University policy required such a search.

On March 6, 1997, Geddis filed a charge of discrimination with the Equal Employment Opportunity Commission and the Delaware Department of Labor. Thereafter, on May 13, 1999, Geddis filed an eight-count complaint in the District Court. Subsequently, the parties agreed to the dismissal of all claims except those based on the grounds (a) that the University engaged in "reverse" race and gender discrimination in violation of Title VII when it terminated Geddis and replaced him with an African-American female and (b) that Geddis' termination constituted a breach of Delaware's implied covenant of good faith and fair dealing. The University then moved for summary judgment, which the District Court granted. Geddis appeals the District Court's grant of summary judgment.

Because we write solely for the parties, we need not set forth a detailed recitation of the background for this appeal and will limit our discussion to resolution of the issues presented.

II.

JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § § 1331 and 1343, and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367. This court has jurisdiction over this matter pursuant to 28 U.S.C. § § 1291 and 1294(1).

**2 This court has plenary review of a grant of summary judgment pursuant to Federal Rule of Civil Procedure 56(c). This court must "examine the evidence of record in the light most favorable to ... the party opposing summary judgment, and resolve *652 all reasonable inferences in her favor.... This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Stewart v. Rutgers, The State University, 120 F.3d 426, 431 (3d Cir.1997) (quotation and citations omitted).

III.

DISCUSSION

A. Reverse Discrimination Claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court articulated a framework for evaluating Title VII employment discrimination claims when, as in most Title VII cases, there is little or no direct evidence of prohibited discrimination. This framework has been recently reviewed and clarified in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Under this framework, a plaintiff claiming employment discrimination must first establish a prima facie case of discrimination. Once a plaintiff has done this, the burden of production shifts to the employer, who must produce evidence that the employment decision adverse to the plaintiff was made for a legitimate, non-discriminatory reason. *Id.* at 142. If the employer does this, then the burden shifts back to the employee/plaintiff to "demonstrate that the proffered reason was merely a pretext for unlawful discrimination." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 319 (3d Cir.2000) (citing *Reeves*, 530 U.S. at 143).

Typically, to establish a prima facie case of discrimination, a plaintiff must establish (i) membership in a protected class, (ii) adequate qualifications for the employment position in question, and (iii) that people who were not in the protected class were treated more favorably than those in the class. *Goosby*, 228 F.3d at 318-19. This showing is, however, ill-suited to claims involving alleged "reverse discrimination." We have held that "the substance of the burden-shifting analysis applies with equal force to claims of 'reverse discrimination,' " *Iadimarco v. Runyon*, 190 F.3d 151, 158 (3d Cir.1999), and that "all that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Id.* at 161.

[1] The University, for the limited purpose of its motion for summary judgment in the District Court, conceded that Geddis has established his prima facie case of discrimination. *Geddis v. Univ. of Delaware*, No. Civ. 99-304, 2001 U.S. Dist. LEXIS 9058, at *18, 2001 WL 536408 (D.Del. May 16, 2001). The District Court found, and Geddis does not deny, that the University has articulated a legitimate, non-discriminatory reason for its employment decision with respect to Geddis. *Id.* at *19. The central question presently at issue between the parties with respect to Title VII is whether, viewing the record in

the light most favorable to Geddis, he could prove by a preponderance of the evidence that the University's reasons for firing him were pretextual. Under *Reeves*, 530 U.S. at 146-48, and *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994), Geddis needs to show that, looking at the record before the District Court, a jury could have reasonably (a) believed that discrimination on the basis of Geddis' race or gender was more likely than not a motivating or determinative cause for his firing or (b) disbelieved the University's proffered reasons for firing him.

*653 **3 Geddis has pointed to nothing in the record below that could lead a reasonable jury to find that his race or gender was the cause of his termination. Rather, the only "evidence" that Geddis points to is (1) that his former position was filled by an African-American woman who he claims was less qualified than he was and (2) that the University did not follow its standard procedures in filling his former position. The fact that Geddis was replaced by an African-American woman does not, as the District Court recognized, support the claim that race or gender played a role in his termination. Geddis has not identified a job description that Benson failed to meet, and her qualifications were evidently well known to University officials.

Geddis' primary strategy in meeting the burden of his Title VII claim is to try to show that the University's reasons for firing him were pretext for race and gender discrimination by arguing that the allegations against him are false and/or that the University failed to adequately investigate these allegations. This court has held that "it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir.2001).

One of the reasons the University gives for firing Geddis is that Kreppel believed that Geddis lacked credibility and the ability to manage Support Services. She formed this belief partly based on an e-mail message from the Associate Vice-President of Human Resources and Labor Relations, which reported, among other things, that Geddis referred to her as that "fucking woman" and a "fucking bitch." App. at 87. The allegations of Geddis' inappropriate remarks and managerial deficiencies were subsequently supported by written statements from two of Geddis' subordinates. App. at 68, 145. Geddis attempts to show pretext by offering reasons to believe that the allegations of these subordinates

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

are false.

In the procedural posture of this case before the District Court, all material factual disputes should be construed in favor of Geddis. The District Court did just that. Even if we were to assume that the allegations against Geddis were not true, Geddis would have to show that he was fired due to discriminatory animus to meet his burden of showing pretext. Nothing in the record adequately supports the claim, for example, that Kreppel's belief that Geddis was ill-suited to direct Support Services was based on his race or sex. Even if the criticisms by Geddis' subordinates had no basis in fact, as he contends, this would not establish that Kreppel fired him because of his race and gender, especially inasmuch as Geddis has not pointed to any evidence that Kreppel knew or should have known that the statements by the subordinates were false.

In addition, Geddis argues that the University failed to adequately investigate the allegations against him and that it did so in violation of University policy. Again, the lack of investigation alone does not establish that the University fired Geddis based on discriminatory reasons.

### B. *Covenant of Good Faith and Fair Dealing*

**4 In *E.I. Du Pont de Nemours & Co. v. Pressman, 679 A.2d 436 (Del.1996)*, the Delaware Supreme Court found that the covenant of good faith and fair dealing supports a cause of action against an employer for firing an employee-at-will when an employer's agent "manufactur[es] materially false grounds to cause an employee's dismissal." *Id.* at 437. Under *Pressman*, as well as **654*Schuster v. Derocili*, 775 A.2d 1029 (Del.2001), an employee-at-will has a cause of action under the covenant of good faith if there are grounds for a jury to believe that an employer "contrived fictitious reasons ... to support her employment termination." *Id.* at 1040.

Geddis does not claim that Kreppel intentionally created "fictitious negative information" about him in order to get him fired. Instead, he argues that Kreppel spoke "with reckless disregard for the truth" when, without having conducted a investigation of the allegations against Geddis, she informed the Vice-President of Administration and the Executive Vice-President about these allegations.

[2] The District Court held that the alleged failure of Geddis' supervisors to adequately investigate the

allegations against him does not "rise to the level of falsification or manipulation" required to constitute a breach of the covenant of good faith. *Geddis*, 2001 U.S. Dist. LEXIS 9058, at *27. The Delaware courts have not construed the covenant's prohibition of falsifications of an employee's employment record as encompassing "reckless disregard for truth." None of the Delaware cases that Geddis cites are relevant because none of them are related to the duties involved in the covenant of good faith. It would not be appropriate for this court to expand Delaware's understanding of its own covenant, especially when the Delaware Supreme Court has insisted on a narrow application. *See, e.g., Pressman, 679 A.2d at 442.*

Geddis also suggests that because the University has a policy of investigating serious allegations about its employees, its failure to do so in his case violates the covenant of good faith. The covenant of good faith has been held to apply to a termination that violates a public policy, namely a policy in the public interest as recognized by some legislative, administrative or judicial authority. *Pressman, 679 A.2d at 441-442.* Even if Kreppel's failure to investigate the allegations against Geddis before reporting them to her superiors did violate University policy, the fact that the University is a publicly-funded institution does not make a violation of its policies a violation of public policy because the University does not set public policy with respect to the general employment policy of the state. Therefore, the University's failure to investigate the allegations does not amount to a violation of the Delaware covenant of good faith and fair dealing.

### IV.

### CONCLUSION

For the reasons described herein, the judgment of the District Court will be affirmed.

C.A.3 (Del.),2002.
Geddis v. University of Delaware
40 Fed.Appx. 650, 2002 WL 1587656 (C.A.3 (Del.))

Briefs and Other Related Documents (Back to top)

• 2001 WL 34397970 (Appellate Brief) Appellant's Reply Brief (Oct. 26, 2001) Original Image of this Document (PDF)
• 2001 WL 34399653 (Appellate Brief) Brief of Appellee University of Delaware (Oct. 11, 2001)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

40 Fed.Appx. 650                                                                    Page 5
40 Fed.Appx. 650, 2002 WL 1587656 (C.A.3 (Del.))
**(Cite as: 40 Fed.Appx. 650)**

Original Image of this Document (PDF)
• 2001 WL 34397969 (Appellate Brief) Appellant's
Opening Brief (Sep. 10, 2001) Original Image of this
Document (PDF)
• 01-2298 (Docket) (May. 23, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT C

Westlaw.

151 Fed.Appx. 162                                                                                    Page 1
151 Fed.Appx. 162, 2005 WL 2562617 (C.A.3 (Del.))
(Cite as: 151 Fed.Appx. 162)

**H**
Briefs and Other Related Documents
This case was not selected for publication in the
Federal Reporter.NOT PRECEDENTIAL    Please
use FIND to look at the applicable circuit court rule
before citing this opinion. Third Circuit Local
Appellate Rule 28.3(a) and Internal Operating
Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3
IOP APP I 5.3.)
United States Court of Appeals,Third Circuit.
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION; Lisa Stepler
v.
AVECIA, INC. Lisa Stepler, Appellant.
No. 04-3396.

Argued July 12, 2005.
Decided Oct. 13, 2005.

**Background:** Discharged employee brought action
against former employer, alleging Title VII
retaliation, wrongful termination in violation of
Delaware law, and intentional infliction of emotional
distress under Delaware law. The United States
District Court for the District of Delaware, Susan L.
Robinson, J., granted summary judgment in favor of
employer on the retaliation and wrongful termination
claims, and dismissed the emotional distress claim.
Employee appealed.

**Holdings:** The Court of Appeals held that:

1(1) genuine issue of material fact precluded
summary judgment in employee's Title VII retaliation
claim, and

2(2) discharge did not violate public policy and did
not involve a falsification of employment records, for
purpose of employee's wrongful termination claim.

Affirmed in part; reversed and remanded in part.

West Headnotes

**[1] Federal Civil Procedure 170A** ☞2497.1

170A Federal Civil Procedure
    170AXVII Judgment

170AXVII(C) Summary Judgment
        170AXVII(C)2 Particular Cases
            170Ak2497 Employees and Employment
Discrimination, Actions Involving
                170Ak2497.1 k. In General. Most
Cited Cases
Genuine issue of material fact as to whether
employee's discharge was related to her complaints
about hostile work environment precluded summary
judgment in employee's Title VII retaliation claim.
Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A.
§ 2000e et seq.

**[2] Labor and Employment 231H** ☞759

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(A) In General
            231Hk759 k. Public Policy Considerations
in General. Most Cited Cases
Under Delaware law, discharge of at-will employee
did not violate public policy and did not involve a
falsification of employment records, for purpose of
employee's wrongful termination claim, absent
showing of employer's violation of a recognized
public interest, or actual manipulation of employment
records.

**\*163** On Appeal from the United States District
Court for the District of Delaware.  Dist. Court Civil
Action No. 03-CV-00320.  District Judge:  The
Honorable Susan L. Robinson.

Phillip B. Bartoshesky (Argued), Biggs and Battaglia,
Wilmington, Del., for Appellant.
Ginger D. Schroder (Argued), Schroder, Joseph &
Associates LLP, Buffalo, N.Y., Jennifer C. Jauffret,
Richards, Layton & Finger, Wilmington, DE, for
Appellee.

Before ALITO, BECKER, and GREENBERG,
Circuit Judges.

OPINION OF THE COURT

PER CURIAM.
**\*\*1** Lisa Stepler, a former laboratory technician for
Avecia, Inc. ("Avecia") sued Avecia for retaliation
under Title VII of the Civil Rights Act of 1964,
wrongful termination under Delaware law, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

151 Fed.Appx. 162
151 Fed.Appx. 162, 2005 WL 2562617 (C.A.3 (Del.))
(Cite as: 151 Fed.Appx. 162)

intentional infliction of emotional distress under Delaware law. The District Court dismissed Stepler's claim for intentional infliction of emotional distress and granted summary judgment in favor of Avecia on Stepler's retaliation and wrongful termination claims. We affirm the dismissal of the claim for the intentional affliction of emotional distress and the entry of summary judgment in favor of Avecia on the wrongful termination claim. However, we reverse the entry of summary judgment in favor of Avecia on the retaliation claim and remand for further proceedings.

I.

Stepler asserts that this case should have been analyzed under the framework of *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).[FN1] Under that framework, the "burden of production and the risk of non-persuasion are shifted to the defendant," and the defendant must show "that even if discrimination was a motivating factor in the adverse employment decision, it would have made the same employment decision regardless of its discriminatory animus." *Armbuster v. Unisys Corp.,* 32 F.3d 768, 778 (3d Cir.1994). This framework only applies, however, where the employee can show *"direct evidence* that an illegitimate criterion was a substantial factor in the decision." *Price Waterhouse,* 490 U.S. at 276 109 S.Ct. 1775 (O'Connor, J., concurring in the judgment) (emphasis added); *see also Walden v. Georgia-Pacific Corp.,* 126 F.3d 506, 513 (3d Cir.1997). We have carefully considered the evidence on which Stepler relies in this case, and while the question is close we conclude that she did not meet the "direct evidence" standard.

> FN1. 42 U.S.C. § 2000e-2(m) does not reach retaliation claims. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 934 (3d Cir.), cert. denied, 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997).

Stepler's Title VII claims must be analyzed under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. Under*164 this framework, Stepler was first required to make out a prima facie case of retaliation by establishing (1) that she engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal link between

her protected activity and the adverse employment action. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279 (3d Cir.2000). If Stepler successfully made out a prima facie case, Avecia had to point to evidence in the summary judgment record that was sufficient, if believed, to support a finding that Stepler was not discharged because of her protected activity. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If Avecia met this burden, Stepler was required to prove that unlawful retaliation was a determinative cause of her firing. *See McDonnell Douglas,* 411 U.S. at 802-803, 93 S.Ct. 1817.

[1] Stepler clearly satisfied the first two prongs of the prima facie case standard. Her complaints about a hostile work environment and retaliation were protected activities, and her firing by Avecia obviously was an adverse employment action. Whether she proffered sufficient evidence to meet the third prong of the prima facie case standard is less clear due to the gap of almost one year between her initial complaint and her termination, but a gap of this magnitude is not conclusive and can be outweighed by a "pattern of harassment" or a "pattern of antagonism" in the intervening period. *See Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir.1997); *see also Robinson v. Southeastern Pennsylvania Transp. Auth.,* 982 F.2d 892, 894-95 (3d Cir.1993). A reasonable jury considering the evidence in the light most favorable to Stepler-including Stepler's performance reviews, management's increased scrutiny of her, the tension with her co-workers, the memorandum of April 23, 2001, and the termination letter-could conclude that there was a causal link between Stepler's protected activities and Avecia's decision to fire her. We thus conclude that Stepler made out a prima facie case.

**2 Avecia's proffered reasons for Stepler's termination were poor work performance and disruptive behavior, but a reasonable jury considering the evidence in the light most favorable to Stepler, and drawing all inferences in Stepler's favor, could conclude otherwise. Particularly noteworthy are the references in both the April 23 memo and the May 4, 2001, termination letter to Stepler's "intense focus upon alleged harassment [and] retaliation." App. 264, 371.

III.

Conversely, there are no issues of fact precluding summary judgment in favor of Avecia on Stepler's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

151 Fed.Appx. 162
151 Fed.Appx. 162, 2005 WL 2562617 (C.A.3 (Del.))
(Cite as: 151 Fed.Appx. 162)

state law claim for breach of the covenant of good faith and fair dealing.

[2] The general rule in Delaware is that employees are employed "at will" and may be dismissed at any time without cause.  See _Merrill v. Crothall-American, Inc., 606 A.2d 96, 103 (Del.1992)._ The general rule does not apply, however, in the following four situations:
(i) where the termination violated public policy;
(ii) where the employer misrepresented an important fact and the employee relied "thereon either to accept a new position or remain in a present one";
(iii) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and
*165 (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination.

_Lord v. Souder, 748 A.2d 393, 400 (Del.2000)_ (citing _E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d 436, 442-44 (Del.1996))._  Stepler claims that Avecia's actions fit into either the first or fourth category.  She contends that the first category fits because being fired for opposition to sexual harassment and retaliation violates public policy, and she argues that the fourth category fits because she was subjected to false criticisms of her work in her performance evaluation, false claims that she was using work time to study, and false claims that she was fired for behavioral and performance issues.

In order to make out a claim of a public policy violation, a plaintiff must satisfy a two-part test: "(i) the employee must assert a public interest recognized by some legislative, administrative or judicial authority and (ii) the employee must occupy a position with responsibility for advancing or sustaining that particular interest." _Lord, 748 A.2d at 401_ (citing _Pressman, 679 A.2d at 441-42)._  To satisfy the first part, Stepler relies on the Delaware Supreme Court's decision in _Schuster v. Derocili, 775 A.2d 1029 (Del.2001),_ which recognized a cause of action for breach of the covenant of good faith and fair dealing where the employee alleged that she was terminated following sexual harassment in the workplace.  But in 2004 the Delaware legislature amended _19 Del. C. § 710 et seq.,_ which prohibits discrimination in employment practices, in order to clarify that this statute was the "sole remedy" for an aggrieved employee "to the exclusion of all other remedies." _19 Del. C. § 712(b) (2005)._  In fact, the synopsis of the Senate Bill expressly states

disagreement with the Delaware Supreme Court's decision in _Schuster:_
**3 This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in _Schuster v. Derocili, 775 A.2d 1029 (2001)._

Delaware Bill Summary, 2004 Reg. Sess. S.B. 154. Moreover, when the bill is read in light of the sponsor statement, which "confirms" and "re-establishes" the pre-existing rule "put in question by" _Schuster,_ it is clear that the 2004 Amendment is meant to be retroactive.    Thus Stepler has not asserted a recognized public interest, and Avecia's actions do not fit into the first category.

Nor do they fit into the fourth category: falsification or manipulation of employment records to create fictitious grounds for termination.    Even if we assume that Stepler was subjected to false criticisms of her work performance and false claims that she was using work time to study, there is no evidence that these particular criticisms and claims were the grounds for Stepler's termination.    And even if we assume that Avecia falsely claimed that Stepler was fired for behavioral and performance issues, this is not the kind of falsehood specified in the fourth category, which provides that an employer violates the covenant of good faith and fair dealing when it "falsifie[s] or manipulate[s] employment records to create fictitious grounds for termination." _Lord, 748 A.2d at 400._  If the employer did not actually falsify or manipulate employment records, then it does not matter if the employer gave a false rationale for termination.  See _Williams v. Caruso, 966 F.Supp. 287, 291 (D.Del.1997)_ ("Nothing in _Pressman_ suggests an employer who gives an employee a false reason for termination*166 is subject to liability under the implied covenant of good faith and fair dealing.    _Pressman_ only held culpable the _manufacture_ of grounds for dismissal, not the _statement_ of a false reason for dismissal.") (emphasis in original);  see also _Geddis v. University of Delaware, 40 Fed. Appx. 650, 654 (3d Cir.2002)_ (unpublished) (noting that the employee did not claim his supervisor "intentionally created 'fictitious negative information' about him in order to get him fired" and thus the conduct at issue did not fit the fourth _Pressman_ category) (quoting _Schuster, 775 A.2d at 1040)._

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

151 Fed.Appx. 162
151 Fed.Appx. 162, 2005 WL 2562617 (C.A.3 (Del.))
**(Cite as: 151 Fed.Appx. 162)**

### IV.

Under Delaware law, the general rule is that the worker's compensation administrative process is the exclusive remedy for an employee who suffers a work-related accident causing personal injury or death. *See* 19 Del.Code Ann. § 2304 (2005). However, the Delaware Supreme Court has held that "claims that involve a *true intent* by the employer to injure the employee fall outside of the Workers' Compensation Act and remain separately actionable as common law tort claims." *Rafferty v. Hartman Walsh Painting Co.,* 760 A.2d 157, 159 (Del.2000) (emphasis added); *see also Showell v. Langston,* No. Civ. A. 02C-01-016, 2003 WL 1387142, at *3 (Del.Super. March 5, 2003) (citing *Rafferty*). Thus, "for a complaint to survive a motion to dismiss, there must be more than a mere allegation that there was an intentional injury; there must be facts alleged which, if true, show deliberate intent to bring about an injury." *Rafferty,* 760 A.2d at 160. In other words, an employee must allege facts that, if true, would show that the employer intended to injure her. It would not be enough to allege facts showing that the employer intended to do an action and that the worker was injured as a result of that action. Specific intent is required.

**\*\*4** Stepler cites *Rafferty* and argues that her claim for intentional infliction of emotional distress is not barred. In a Memorandum Order of April 28, 2004, the District Court rejected Stepler's argument. We agree with the District Court's analysis.

We therefore affirm the District Court's order of summary judgment in favor of Avecia on Stepler's claims under Delaware law, but we reverse the District Court's order granting summary judgment in favor of Avecia on Stepler's retaliation claim, and we remand the case for further proceedings.

C.A.3 (Del.),2005.
E.E.O.C. v. Avecia, Inc.
151 Fed.Appx. 162, 2005 WL 2562617 (C.A.3 (Del.))

Briefs and Other Related Documents (Back to top)

• 04-3396 (Docket) (Aug. 23, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.